UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| MATTHEW LEE PRYOR, | ) | |
|---|---|---|
| | ) | Case No. 3:21-cv-32 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge H. Bruce Guyton |
| J EVANS, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff, a Tennessee Department of Correction ("TDOC") prisoner, has filed a pro se complaint for violation of 42 U.S.C. § 1983 (Doc. 2) and a motion for leave to proceed *in forma pauperis* (Doc. 1). For the reasons set forth below, Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 1) will be **GRANTED**, and this action will be **DISMISSED** because the complaint fails to state a claim upon which relief may be granted under § 1983 as to any Defendant.

### I.  FILING FEE

As it appears from Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 1) that he is unable to pay the filing fee, this motion will be **GRANTED**.

Because Plaintiff is a TDOC prisoner, he will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Main Street, Knoxville, Tennessee 37902 twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the

full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this procedure, the Clerk will be **DIRECTED** to provide a copy of this memorandum opinion to the custodian of inmate accounts at the institution where Plaintiff is now confined, the Attorney General for the State of Tennessee, and the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II. COMPLAINT SCREENING

### A. Standard of Review

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard that the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim are insufficient to state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a claim upon which relief may be granted.

*Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him of a federal right. 42 U.S.C. § 1983.

### B. Complaint Allegations[1]

Officers and inmates "singled [Plaintiff] out," "tried to defam[]e [Plaintiff's] character," and "talked about [Plaintiff] and kept [him] from working." (Doc. 2, at 5.) Plaintiff specifically states that "where the officers were trying to control [] [his human immunodeficiency virus ("HIV")][,] [he] was called a creep and a rapist[,] [] threatened multiple times[,] and told [that he] could not speak to female employees," even though other inmates without HIV were allowed to speak to female employees. (*Id.*) Plaintiff therefore claims that this statement implied that he could not speak to women because he is positive for HIV and broke his medical confidentiality. (*Id.*)

Plaintiff further asserts that unspecified individuals took his property "to make [him] look low" while introducing contraband and allowing other inmates to have cell phones and intimate relationships with female officers in order "to make gang leaders get [their] gang members to

---

[1] Plaintiff signed his complaint on July 26, 2020. (Doc. 2, at 8.) The Court did not receive it until February 1, 2021 (*Id.* at 1), the stamp date on the envelope containing Plaintiff's motion for leave to proceed *in forma pauperis* and complaint is January 29, 2021 (Doc. 1, at 6), and the printout of Plaintiff's trust account statement lists a transaction from January 13, 2021 (*Id.* at 3). Thus, the Court considers the stamp date on the envelope containing Plaintiff's complaint and motion for leave to proceed *in forma pauperis* as the date on which Plaintiff filed his complaint. *Houston v. Lack,* 478 U.S. 266, 276 (1988) (finding that a prisoner's action is filed on the date that it is properly delivered to the prison officials for mailing); *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (providing that the signing date on a pro se prisoner's pleading is considered the filing date, unless there is evidence to the contrary).

3

behave." (*Id.* at 5–6.) Unspecified individuals also have been trying to cut Plaintiff off and isolate him to control his HIV, with which he has been living for ten years, during which time he has been responsible. (*Id.* at 6.) Additionally, "those around [Plaintiff] have conspired socially around [him] to abuse and mistreat [him], [and] to single [him] out and treat [him] as though [he is] less important," and this has caused him grief. (*Id.*)

On or about April 15, 2020, unspecified individuals placed Plaintiff in confinement in retaliation for him filing a complaint, and when his personal property was packed, his Nike shoes, radio, and sweatpants were missing. (*Id.*)

In December 2019, Defendant Officer Corban told Plaintiff he could not speak to female employees and that he would beat Plaintiff up if he bothered any females. (*Id.*)

Also, on an unspecified date after Plaintiff spoke to Defendant Detharidge, who is Defendant Evans's girlfriend, about contacting the Federal Bureau of Investigation ("FBI") because he "had information," Defendant Evans threatened him, and Defendant Detharidge had Plaintiff kicked out of an unspecified place and Plaintiff "was kept from working." (*Id.*) Plaintiff also states that when he asked an unspecified individual for a grievance, he was locked up in confinement. (*Id.*)

On October 22, 2020, an unidentified female officer who was helping gang members and having relationships with them singled Plaintiff out and put him on lockdown, at which point he became so distressed that he attempted suicide. (*Id.*) According to Plaintiff, officers continue to favor other inmates while not allowing Plaintiff to work where inmates may be alone with female officers, despite allowing other inmates who they want to reward or keep happy to work in such areas. (*Id.* at 6–7.)

4

Plaintiff wrote the FBI about officers conspiring with inmate gang members to cause him harm but received no response. (*Id.* at 7.) After this, unnamed officers moved Plaintiff to a unit where he had no access to a law library, could not trust the guards, and carried a weapon for protection (*Id.*). Then, in the beginning of July, Defendant Officer Brassfield threatened Plaintiff in front of counselors and inmates while giving special positions and privileges to known gang leaders, whom he allowed to deal narcotics, have inmate/staff relationships, and victimize non-affiliated inmates. (*Id.*)

Plaintiff asserts that these incidents violated his Eighth Amendment rights. (*Id.* at 5.) He has sued a number of jail officials and requests a jail transfer due to fear of retaliation, damages from the TDOC, reprimand and suspension of officers, fair and impartial treatment with dignity and respect, that his rights be upheld, and that Defendants pay all costs and legal fees. (*Id.*)

### C. Analysis

The Court will first address Plaintiff's specific allegations against named Defendants before addressing named Defendants that Plaintiff does not reference in the substantive portion of his complaint.

#### 1. Defendant Corban

First, Plaintiff alleges that in December 2019, Defendant Corban told him that he could not talk to any female employees and that Corban would beat Plaintiff up if he bothered any females. (Doc. 2, at 6.) It appears that Plaintiff's allegation that Defendant Corban told him not to talk to female employees may arise out of the same incident Plaintiff references in the first paragraph of the complaint's substantive allegations, wherein he alleges that an unidentified officer told him not to talk to female employees, which Plaintiff claims implied that he could not talk to females because he is positive for HIV and therefore broke his medical confidentiality.

5

(*Id.* at 5.) However, as Plaintiff specifies that this incident with Defendant Corban occurred in December 2019 and, as set forth above, Plaintiff did not file his complaint until late January 2021, it is likely time-barred. *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) (federal district courts apply a state's statute of limitations to § 1983 claims); Tenn. Code Ann. § 28-3-104(a)(1)(B) (setting forth one-year statute of limitations for § 1983 claims).

Moreover, even if the Court assumes that this claim is timely, the allegations in support thereof fail to state a claim upon which relief may be granted under § 1983. First, to the extent that Plaintiff's allegation that an unidentified officer allowed other inmates without HIV to speak to females but did not allow Plaintiff to do so in a manner that violated his medical confidentiality can be liberally construed to allege a violation of the Health Insurance Portability and Accountability Act ("HIPAA") and/or the Equal Protection clause against Defendant Corban, they fail to state such a claim. Specifically, while Plaintiff alleges that other inmates without HIV could speak to female employees, he has set forth no facts from which the Court can plausibly infer that these inmates were similarly situated to him in all relevant ways, as required to state an equal protection claim. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (noting that the Equal Protection Clause "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike"); *Nali v. Ekman,* 355 Fed. App'x 909, 913 (6th Cir. 2009) (stating that a complaint's allegation of race discrimination regarding discipline must be supported by allegations "that the people not disciplined were similarly situated and of a different race" to state an equal protection claim).

Also, no facts in Plaintiff's complaint allow the Court to plausibly infer that Defendant Corban shared Plaintiff's confidential medical information in violation of HIPAA. But even if Defendant Corban did so, "[c]ourts have repeatedly held that HIPAA does not create a private

6

right" and "cannot be privately enforced . . . via § 1983." *Crockett v. DCSO Med. Dep't*, No. 3:20-CV-322, 2020 WL 5893824, at *2 (M.D. Tenn. Oct. 5, 2020) (citations omitted).

Further, to the extent that Plaintiff alleges that Defendant Corban violated his First Amendment rights by telling him that he could not talk to female employees, Plaintiff has set forth no facts from which the Court can plausibly infer that other incidents in the complaint were related to this statement, and this incident standing alone or with other isolated incidents of interference with Plaintiff's First Amendment rights is insufficient to establish a constitutional violation. *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson v. Wilkinson*, 229 F.3d 1152, 2000 WL 1175519, at *2 (6th Cir. Aug. 11, 2000) for its holding that "isolated incidents" of interference with a prisoner's rights do not rise to the level of a First Amendment violation); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (holding that "a random and isolated incident [of mail interference] is insufficient to establish a constitutional violation").

Also, Plaintiff's allegation that Defendant Corban threatened to beat him up does not allege an Eighth Amendment violation, as verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987).

### 2. Defendants Evans and Brassfield

Plaintiff also alleges that Defendants Evans and Brassfield threatened him. (*Id.* at 6–7.) However, these allegations fail to state a claim for violation of the Eighth Amendment upon which relief may be granted under § 1983. (*Id.*) The Court will address whether Plaintiff's allegation that Defendant Evans threatened him may adequately allege part of a retaliation claim below.

7

### 3. Defendants Evans and Detharidge

Plaintiff also alleges that after he asked Defendant Detharidge to contact the FBI, Defendant Evans, who is Defendant Detharidge's boyfriend, threatened him and "[Defendant Detharidge] had [him] kicked out and then [he] was kept from working." (*Id.*) However, nothing in the complaint allows the Court to plausibly infer from what event or place Defendant Detharidge excluded Plaintiff after this request, much less that this exclusion violated his constitutional rights. Moreover, Plaintiff does not allege that Defendants Evans or Detharidge was personally involved in keeping him from working,[2] so his allegation that he was unable to work after this incident likewise fails to state a claim upon which relief may be granted under § 1983 as to these Defendants. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted under § 1983).

Further, to the extent that Plaintiff alleges that the acts of Defendants Evans and Detheridge in his complaint amount to retaliation in violation of his First Amendment rights, the allegations fail to state a claim upon which relief may be granted under § 1983. Specifically, a § 1983 retaliation claim requires a plaintiff to demonstrate that (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). However, even if

---

[2] Plaintiff also does not have a "constitutional right to prison employment or a particular prison job." *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003).

8

the Court assumes that Plaintiff's request that Defendant Detharidge contact the FBI was protected conduct, the complaint does not contain any facts from which the Court can plausibly infer that this request motivated Defendant Evans's subsequent threat towards Plaintiff or Defendant Detharidge's act of kicking Plaintiff out of an unspecified place, or that these acts would deter a person of ordinary firmness from continuing to engage in protected speech. *Id.* at 398 (providing that "certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations"). Further, as the Court noted above, Plaintiff does not allege that Defendant Evans or Defendant Detharidge was personally involved in keeping him from working such that they could be liable under § 1983 for this act. *Frazier*, 41 F. App'x at 764 (6th Cir. 2002).

### 4. Defendants Washam, Ball, and Coffey

Lastly, while Plaintiff has also sued Defendants Washam, Ball, and Coffey, and makes a number of factual allegations about acts and omissions of general officers, he does not set forth any facts from which the Court can plausibly infer that these named Defendants were personally involved in any alleged violation of his constitutional rights. As such, the complaint fails to state a claim upon which relief may be granted under § 1983 as to these Defendants. *Id*.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 1) will be **GRANTED**;

2. Plaintiff will be **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

9

4. The Clerk will be **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined, the Court's financial deputy, and the Attorney General for the State of Tennessee;

5. Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983;

6. Accordingly, this action will be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A); and

7. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED**.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**